UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DYNEGY DANSKAMMER, L.L.C.,

                          Plaintiff,

          -v-

PEABODY COALTRADE INTERNATIONAL
LTD.,
                          Defendant.

Case No. 12-CV-5859 (KMK)

OPINION AND ORDER

Appearances:

James D. Arden, Esq.
John J. Lavelle, Esq.
Sophia Park Mullen, Esq.
Sidley Austin LLP (NY)
New York, New York
*Counsel for Plaintiff*

Robert A. Scher, Esq.
Foley & Lardner, LLP
New York, New York
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

       Plaintiff, Dynegy Danskammer, L.L.C. ("Danskammer"), brings this suit against

Peabody COALTRADE International Ltd. ("Peabody") alleging breach of contract for delaying

delivery or failing to deliver coal shipments at various times from 2008 to 2011.  Plaintiff

Danskammer filed a Chapter 11 petition on November 7, 2011.  On July 24, 2012, Defendant

Peabody moved to withdraw the reference to the bankruptcy court for the breach of contract

claim under 28 U.S.C. § 157(d).  (Dkt. No. 1.)  For the reasons stated herein, Peabody's Motion

to Withdraw the Reference to bankruptcy court is granted.

I. Background

The following facts, drawn from Danskammer's Complaint, are assumed to be true for purposes of deciding the instant Motion.  On January 1, 2008, Peabody and Danskammer entered into a Contract for Sale and Purchase of Guasare Steam Coal (the "Contract").  (Compl. ¶ 8.) Under the Contract, Peabody agreed to sell and deliver, and Danskammer agreed to purchase and receive, the coal.  (*Id.*)  On November 7, 2011, Danskammer filed its Chapter 11 petition. Danskammer alleges that Peabody breached the Contract by "fail[ing] to timely and completely perform its obligations under the agreement, repeatedly delaying coal shipments or declaring force majeure," (*id.* ¶ 13), and points to a delay in late 2008 and failures to deliver in February 2009, April 2009, March 2010, and November 2011, (*id.* ¶ 13-33).  Based on these events, Danskammer pleads two causes of actions: (1) breach of contract, and in the alternative, (2) an ongoing anticipatory repudiation of the Contract.  (*Id.* ¶¶ 34-57.)  Danskammer claims damages including demurrage charges, dead freight charges, and other incidental and consequential damages.  (*Id.* at 15-16.)

Danskammer filed its Debtor's Complaint against Peabody for breach of contract on June 4, 2012 in bankruptcy court.[1]  On July 24, 2012, Peabody filed this Motion to Withdraw the Reference to the bankruptcy court.  (Dkt. No. 1.)

---

[1]  A standing order in the Southern District of New York automatically refers "any or all proceedings arising under title 11 . . . or related to a case under title 11" to the bankruptcy court. In re Standing Order of Reference Re: Title 11, No. 12-M-32 (S.D.N.Y. Jan 31, 2012).

## II. Discussion

### A. Legal Standard

#### 1. Jurisdiction and Adjudicative Power of the Bankruptcy Court

With certain exceptions not relevant here, district courts have original jurisdiction over all civil proceedings "arising under" or "related to" title 11.  *See* 28 U.S.C. § 1334.  Pursuant to 28 U.S.C. § 157, district courts may refer "all cases under title 11 and all core proceedings arising under title 11" to the district's bankruptcy court.  28 U.S.C. § 157(b)(1).  Section 157(b)(2) provides a non-exclusive list of proceedings designated as "core."  *Id.* § 157(b)(2).  Until recently, the bankruptcy court's role depended on whether the proceeding was "core" or "non-core."  With respect to core proceedings, the bankruptcy court could issue a final determination, but with respect to non-core proceedings, it was permitted only to "submit proposed findings of fact and conclusions of law to the district court," which were then subject to de novo review in the district court.  28 U.S.C. § 157(c); *see Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 189-91 (2d Cir. 2003) (explaining the role of bankruptcy courts in core and non-core proceedings).

In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Supreme Court altered this framework by holding that the constitutional grant of judicial power to Article III courts, not the statutory designation of "core" or "non-core," determines whether a bankruptcy judge may issue a final determination.  *See also Adelphia Recovery Trust v. FLP Grp., Inc.*, No. 11-CV-6847, 2012 WL 264180, at *2 (S.D.N.Y. Jan. 30, 2012) (explaining *Stern*'s holding that "Congress's delineation of core matters in section 1572(b)(2) overstepped constitutional boundaries . . . when it allowed bankruptcy courts 'to enter a final judgment on a state law counterclaim'" (quoting *Stern*, 131 S. Ct. at 2620)); *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 464

3

(S.D.N.Y. 2011) (noting that after *Stern*, "identifying a claim as 'core' or 'non-core' under the bankruptcy law does not necessarily determine whether a bankruptcy court is constitutionally empowered to finally adjudicate the matter").  In holding that Article III did not permit a bankruptcy court to adjudicate finally the state law counterclaim at issue in *Stern*, the Supreme Court considered: (1) whether the counterclaim involved a public or private right; (2) whether the process of adjudicating the creditor's proof of claim would resolve the counterclaim; and (3) whether the parties consented to final adjudication by the bankruptcy court.  131 S. Ct. at 2608, 2614, 2617.

2. Withdrawal of Bankruptcy Reference

Pursuant to 28 U.S.C. § 157(d), a "district court may withdraw, in whole or in part, any case or proceeding referred under this section . . . for cause shown."  Prior to *Stern*, the Second Circuit held in *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (1993), that cause for withdrawal should be evaluated based on five factors: "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."  The *Orion* court emphasized that "[a] district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn."  *Id.*  The *Orion* court further reasoned that "the fact that a bankruptcy court's determination on non-core matters is subject to de novo review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court."  *Id.*

Following the Supreme Court's holding in *Stern*, courts in this district have taken different approaches in adapting the *Orion* factors to *Stern*'s holding.  Some courts have

4

modified the first prong of *Orion* (whether a proceeding is core or non-core) and considered whether the bankruptcy court has constitutional authority to finally adjudicate the matter under *Stern*. *See Arbco Capital Mgmt., LLP v. O'Connell*, 479 B.R. 254, 262 (S.D.N.Y. 2012) ("This Court concludes, as have others in this district, that the relevant inquiry under the first prong of the *Orion* test is not whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter."); *Lyondell Chem. Co. v. Blavatnik*, 467 B.R. 712, 719 (S.D.N.Y. 2012) ("Under *Stern*, it is not the core/non-core distinction but Article III that determines the bankruptcy court's adjudicative authority. Thus, a district court . . . must first determine whether or not the bankruptcy court has constitutional authority to enter final judgment on the claim . . . . To the extent the core/non-core distinction held a privileged position among the *Orion* factors before *Stern*, this is no longer the case."); *In re Levine*, No. 11-CV-9101, 2012 WL 310944, at *2-3 (S.D.N.Y. Feb. 1, 2012) (applying *Stern*'s public rights doctrine to the core/non-core *Orion* factor); *Dev. Specialists, Inc.*, 462 B.R. at 471-72 (modifying *Orion*'s core/non-core factor to account for final adjudicative authority as determined by *Stern*); *see also Picard v. Avellino*, 469 B.R. 408, 413 n.3 (S.D.N.Y. 2012) (acknowledging *Stern*'s impact on the analysis of judicial efficiency set out in the *Orion* factors).

A second approach retains the original *Orion* factors and adds *Stern*'s evaluation of the bankruptcy court's constitutional authority to make a final determination as a separate inquiry. *See Adelphia Recovery Trust*, 2012 WL 264180, at *3 ("After *Stern*, a court's consideration of a motion to withdraw reference to bankruptcy court should–in addition to the *Orion* factors–include consideration of: whether the claims at issue involve a public or private right; whether the claims will be resolved in ruling on a creditor's proof of claim, if any; and whether the parties consent to final adjudication by a non-Article III tribunal."); *see also Madison Bentley*

5

*Assocs. v. Bentley Manhattan Inc., LLC*, 474 B.R. 430, 435 (S.D.N.Y. 2012) (same).

Finally, some district courts have continued to apply the *Orion* test as originally conceived with no modification in light of the *Stern* holding.  *See Extended Stay, Inc. v. Blackstone Grp.*, 466 B.R. 188, 204 (S.D.N.Y. 2011) ("As an initial matter, there is nothing in *Stern* to suggest that the statutory distinction between core claims and non-core claims is an inappropriate consideration when analyzing permissive withdrawal under section 157(d)."); *see also Coudert Bros. v. Peabody Energy Corp.*, No. 11-CV-4949, 2011 WL 7678683, at *3-5 (S.D.N.Y. Sept. 23, 2011) (granting motion to withdraw the reference with respect to non-core claims).

After considering these approaches, this Court concludes that the first of the *Orion* factors, originally the statutory core/non-core distinction, should include the question of whether the bankruptcy court has constitutional authority to enter a final decision under *Stern.*  The *Orion* court reasoned that the core/non-core distinction was particularly relevant for efficiency considerations, because if the matter was core, a bankruptcy court could issue a final determination, whereas if the matter was non-core, it would be subject to de novo review by the district court.  *See Orion*, 4 F.3d at 1101.  But because the core/non-core determination is no longer dispositive of a bankruptcy court's authority to enter a final determination, it is no longer "upon this issue that questions of efficiency and uniformity will turn."  *Id.*  Instead, following *Stern*, the question of whether the bankruptcy court may finally determine a proceeding or whether the bankruptcy court's proposals must be reviewed de novo by a district court is governed by Article III.  *See Stern*, 131 S. Ct. at 2608.  Thus, this Court joins the other courts that have applied a modified analysis of the core/non-core factor under *Orion* to account for the Article III requirements and exceptions articulated in *Stern*.

6

B. Analysis

The Court now considers each of the five *Orion* factors, as modified by *Stern*: whether the bankruptcy court has final adjudicative authority over the claim; whether the claim is legal or equitable; and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law.

1. The Bankruptcy Court's Final Adjudicative Authority

As discussed above, the first inquiry is whether the bankruptcy court has final adjudicative authority over the claim under *Stern*'s constitutional analysis.  The *Stern* Court explained that Article III protects liberty "through its role in implementing the separation of powers" and "by specifying the defining characteristics of Article III judges."  131 S. Ct. at 2609.  Therefore, "in general, Congress may not 'withdraw from [Article III] judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" *Id.* (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1856)).  In other words, only Article III courts may make final determinations in common law, equity, and admiralty suits.  *See id.*  Consistent with this principle, the Supreme Court set forth three instances where a bankruptcy court may adjudicate finally a claim at issue: (1) if the claim involves a public right; (2) if the process of adjudicating the creditor's proof of claim would resolve a counterclaim; or (3) if the parties consent to final adjudication by the bankruptcy court.  *See id*. at 2608, 2614, 2617; *accord Lyondell Chem. Co.*, 467 B.R. at 720 (applying these three considerations in deciding motion to withdraw bankruptcy reference).

<u>a. Public Versus Private Rights</u>

The first consideration under *Stern* is whether the case involves "public rights" such that it may be assigned to a non-Article III court for final resolution.  *See* 131 S. Ct. at 2611-15.  In *Stern*, the Supreme Court recognized that the public rights "exception has been the subject of some debate," but concluded that it was limited to "cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority." *Id.* at 2611, 2613; *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55-56 (1989) (holding that public rights doctrine did not encompass trustee's claim for fraudulent conveyance); *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 588-92 (1985) (concluding that rights provided by statutory compensation and arbitration scheme were public rights); *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69-70 (1982) (plurality opinion) (describing the public rights doctrine).

Regardless of the exact contours of the public rights exception, the state law breach of contract claim here is clearly outside its bounds.  In *Northern Pipeline*, the Supreme Court held that the post-petition breach of contract and misrepresentation claims at issue did not involve public rights, and, therefore, the bankruptcy court did not have the constitutional authority to finally adjudicate them.  *See* 458 U.S. at 71 (plurality opinion) (rejecting argument that post-petition breach of contract claim involved public rights and explaining that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages . . . . The former may well be a 'public right,' but the latter obviously is not."); *id.* at 91 (Renhquist, J., concurring) (concluding that breach of contract claim could not be

adjudicated in bankruptcy court under the public rights doctrine); *see also Stern*, 131 S. Ct. at 2611, 2615 (holding that a "state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy" is outside the public rights doctrine, and in fact, requires "the most prototypical exercise of judicial power: the entry of a final, binding judgment *by a court* with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime" (emphasis in original)); *Granfinanciera*, 492 U.S. at 55-56 (describing *Northern Pipeline*'s holding that "state-law causes of action for breach of contract or warranty are paradigmatic private rights, even when asserted by an insolvent corporation in the midst of Chapter 11 reorganization proceedings"). Therefore, the public rights doctrine does not permit final determination of Plaintiff's claim by the bankruptcy court.

Plaintiff argues that under *U.S. Lines, Inc. v. American Steamship Owners Mutual Protection & Indemnity Ass'n*, 197 F.3d 631 (2d Cir. 1999), the post-petition breach of a pre-petition contract in this case is a "core" proceeding that should remain in bankruptcy court. (Plaintiff's Mem. in Opp. to Def.'s Mot. for Withdrawal of the Ref. ("Plaintiff's Mem.") 9-11.) In *U.S. Lines*, the Second Circuit issued three opinions to explain that the breach of contract claim for indemnity insurance contracts in that case was "core" and should not have been withdrawn from the bankruptcy court. Writing for the court, Judge Walker reasoned that a proceeding can be core if either "(1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." *U.S. Lines*, 197 F.3d at 637 (citations omitted). He explained that the insurance contracts at issue would have "a significant impact on the administration of the [bankruptcy] estate," given

9

that they were arguably the most important asset of the estate, and thus the dispute was a "core"

proceeding. *Id.* at 634.  In concurring, Judge Calabresi thought it best to "defer the matter [of

whether all post-petition breaches of pre-petition contracts are core] to another day," though he

indicated that he would be "inclined to favor a case-by-case approach." *Id.* at 643 (Calabresi, J.,

concurring).  And, Judge Newman proposed a "bright-line rule that treats as core proceedings all

suits alleging post-petition breaches of pre-petition contracts." *Id.* at 641 (Newman, J.,

concurring).

      The case at hand is distinguishable from *U.S. Lines*.  Unlike the insurance contract in that

case, there is no allegation that the coal Contract here involves the most important asset of the

bankruptcy estate.  Although Danskammer's claim clearly does involve some of the estate's

property, such involvement alone is not sufficient to render a claim core.  *See id.* at 638

(collecting cases); *Orion*, 4 F.3d at 1102 (finding a post-petition breach of a pre-petition contract

to be non-core); *Enron Power Mktg., Inc. v. City of Santa Clara*, No. 01-CV-7964, 2003 WL

68036, at *9 (S.D.N.Y. Jan. 8, 2003) (explaining that because the post-petition breach "causes of

action are essentially contract claims dressed up as bankruptcy claims, they must be considered

'non-core'").  Only Judge Newman's bright line approach that *all* post-petition breaches must be

"core" favors Danskammer's position.  However, such an approach has never been adopted

within or by the Second Circuit.  *See, e.g.*, *Enron Power Mktg., Inc.*, 2003 WL 68036, at *9

(finding a post-petition breach of contract claim to be non-core).  In any event, even if the

present claim were designated "core" by Judge Newman's post-petition bright line, because it is

a private right and does not meet any of the other *Stern* exceptions (as discussed below), the

bankruptcy court may not finally adjudicate the claim, and this Court would be required to

review any proposed findings de novo.  Thus, adjudication of this claim by the bankruptcy court
would not satisfy the *Orion* court's intent to prevent duplicative review.

### b. Whether Claim Would Be Resolved in Ruling on Proof of Claim

The *Stern* Court also considered whether the "process of adjudicating [a] proof of claim
would necessarily resolve [a state-law] counterclaim."  131 S. Ct. at 2617.  In this case, the
primary facts at issue in the breach of contract claim–Peabody's alleged failure to deliver the
coal shipment and resulting damages–will not be resolved by the bankruptcy court's adjudication
of Danskammer's title 11 petition.

### c. Consent

Finally, Peabody has not consented to adjudication by the bankruptcy court.  *See id*. at
2607-08, 2614 (suggesting that consent could permit final adjudication by the bankruptcy court
when the public rights doctrine does not apply); *see also* Fed. R. Bankr. P. 7012(b) (requiring
"express consent" of the parties to allow final adjudication in non-core proceedings); *Men's
Sportswear, Inc. v. Sasson Jeans, Inc.*, 834 F.2d 1134, 1138 (2d Cir. 1987) ("[A] court should
not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated
by a non-Article III bankruptcy judge.").  It was this district's standing order that automatically
referred this case to the bankruptcy court, and Peabody, by its motion, has declined to consent to
final adjudication of this case in bankruptcy court.

Because none of the three exceptions applies here, Article III prohibits the bankruptcy
court from issuing a final determination of Danskammer's contract claims.  This conclusion tips
the scales toward withdrawal.

11

2. Additional *Orion* Factors

   *Orion* dictates consideration of additional factors before determining whether withdrawal

of the reference is appropriate.  *See Lyondell Chem. Co.*, 467 B.R. at 723 ("The bankruptcy

court's authority to enter final judgment on claims is not determinative in deciding whether to

withdraw the reference . . . .").  In this case, however, the additional *Orion* factors also support

withdrawal of the reference.

   Under *Orion*, district courts should consider the most efficient use of judicial resources.

The determination as to whether the bankruptcy court could issue a final determination is

"pivotal," *Orion*, 4 F.3d at 1102, because if a district court must review recommendations de

novo, "it would be inefficient to allow the[] proceedings to go forward, knowing that they will

have to be substantially repeated," *Dev. Specialists, Inc.*, 462 B.R. at 472.  On the other hand, in

cases where the bankruptcy court is more familiar with the record or already has extensive

experience in the matter, it may be most efficient for the bankruptcy court to propose

recommendations first, even though the district court ultimately would have to review them de

novo.  *See Lyondell Chem. Co.*, 467 B.R. at 723 (denying motion to withdraw reference where

bankruptcy court had already overseen discovery and begun work on several motions to

dismiss); *Adelphia Recovery Trust*, 2012 WL 264180, at *7 (explaining that the bankruptcy court

has "a wealth of knowledge . . . having overseen . . . this action for seven years"); *Extended Stay,

Inc.*, 466 B.R. at 206 ("Judicial economy would be promoted by allowing the bankruptcy court,

already familiar with the extensive record in this case, to initially adjudicate these cases.").

   Here, Defendant's Motion was filed shortly after the Complaint was filed, and no

discovery or extensive motion practice has come before the bankruptcy court.  As a result, the

bankruptcy court likely does not have extensive familiarity with the record related to the Complaint.  Danskammer claims that it would be more efficient to conduct all proceedings in one court (Plaintiff's Mem. 12), but this does not account for the fact that this Court would ultimately be required to review de novo the bankruptcy court's proposed findings as to the contract claim.  Thus, withdrawal of the reference is necessary in order to adjudicate the proceedings in a single court, and efficiency considerations weigh in favor of granting the Motion for Withdrawal.

Orion also advises district courts to consider the prevention of forum shopping.  There is no indication that forum shopping was Peabody's motivation, as opposed to a genuine desire for more efficient adjudication.  See Lyondell Chem. Co., 467 B.R. at 725 ("It is unclear whether the defendants are engaged in forum shopping or simply believe that withdrawal of the reference will reduce the time and expense of litigation.").  Therefore, this consideration does not cut one way or the other.

The final Orion factor is whether the bankruptcy court's adjudication of the claim would promote uniformity of bankruptcy administration.  To evaluate whether a benefit to uniform administration exists, courts look to the nature of the cause of action.  Courts routinely have found no benefit where claims are based on state law.  See, e.g., Dev. Specialists, Inc., 462 B.R. at 473 (finding that claims based on New York state partnership and contract law would have "no impact that would require uniform, coordinated adjudication before the Bankruptcy court").  In contrast, courts have found a benefit where the claims are based on bankruptcy law itself.  See Arbco Capital Mgmt., LLP, 479 B.R. at 268 (finding a benefit to uniform bankruptcy administration where claims focused on specific provisions of the Bankruptcy Code); Extended

13

*Stay, Inc.*, 466 B.R. at 207 (discussing benefit of bankruptcy court administration where claims likely involved "novel issues of bankruptcy law"). Danskammer's claims in this case are based in state contract law, and there is no indication that any bankruptcy-specific legal analysis will be required. Danskammer argues that the pending motion to compel arbitration in the bankruptcy court is reason to maintain the reference. (Plaintiff's Mem. 13.) Although bankruptcy courts may have experience resolving motions to compel arbitration, *see, e.g.*, *In re Millennium SeaCarriers, Inc.*, 275 B.R. 690 (S.D.N.Y. 2002), such experience is not bankruptcy specific.[2] Thus, withdrawing the reference likely would not harm the uniformity of bankruptcy administration.

In sum, an analysis of the *Orion* factors, as modified by *Stern*, supports granting the Motion for Withdrawal. Under *Stern*, the bankruptcy court lacks constitutional authority to make a final determination in this case. As described above, the other *Orion* factors also support withdrawal of the reference considering the overall judicial efficiency, the lack of evidence of forum shopping, and the lack of impact on the uniformity of bankruptcy administration.[3]

---

[2] In any event, this is a non-core proceeding, and any "conflict [between the Bankruptcy Code and arbitration] is lessened in non-core proceedings which are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration." *U.S. Lines*, 197 F.3d at 640; *see also Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 166 (2d Cir. 2000) ("[T]he presumption in favor of arbitration generally will trump the lesser interest of bankruptcy courts in adjudicating non-core proceedings that could otherwise be arbitrated."). Moreover, withdrawal promotes judicial efficiency, because this Court reviews bankruptcy court arbitration orders de novo. *See Crysen/Montenay Energy Co. v. Shell Oil Co.*, 240 B.R. 166, 171 (S.D.N.Y. 1999), *aff'd* 226 F.3d 160.

[3] *Orion* also directs lower courts to consider whether the proceeding may involve a jury trial, which cannot be conducted by a non-Article III court without consent of the parties. *See Arbco Capital Mgmt., LLP*, 479 B.R. at 267 (considering the fact that the bankruptcy court could not conduct a jury trial in analyzing a motion to withdraw the reference to the bankruptcy court); *Dev. Specialists, Inc.*, 462 B.R. at 472 (noting that defendant demanded a jury trial, and this demand precluded the bankruptcy court from finally adjudicating the claim); *see also* 28 U.S.C.

III. Conclusion

For the reasons stated herein, Defendant's Motion to Withdraw the Reference is granted.

The Clerk of Court is respectfully directed to terminate the pending motion. (Dkt. No. 1.)

SO ORDERED.

Dated:      White Plains, New York
            November  , 2012

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

157(e) ("[A] bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties."). If a jury trial were required, this could counsel for withdrawal of the reference. *See Orion*, 4 F.3d at 1101-02 ("[A] district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference.").

    This factor does not change the analysis, because it is far from clear that a jury trial is in the immediate future of this case (indeed, Peabody believes this dispute should go to arbitration), and a withdrawal could be effected later if a jury trial were demanded. *See Lyondell Chem. Co.*, 467 B.R. at 725 ("If and when the defendants assert their jury trial rights and/or the case proceeds to trial, then, the defendants are free to move for withdrawal a second time."); *Extended Stay, Inc.*, 466 B.R. at 205-06 (noting that the actions were "far from trial ready," and the motion for withdrawal could be made again at a later time).

15

Service List:

James D. Arden, Esq.
John J. Lavelle, Esq.
Sophia Park Mullen, Esq.
Sidley Austin LLP (NY)
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
(212) 839-5599 (fax)
jarden@sidley.com
jlavelle@sidley.com
smullen@sidley.com
*Counsel for Plaintiff*

Robert Allen Scher, Esq.
Foley & Lardner, LLP
90 Park Avenue
New York, NY 10016
(212) 682-7474
(212) 687-2329 (fax)
rscher@foley.com
*Counsel for Defendant*